| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>---------------------------------------------------------------- X<br>UNITED STATES OF AMERICA,<br><br>                      - against -<br><br>GAETANO NAPOLI, SR., THOMAS NAPOLI,<br>GAETANO NAPOLI, JR.,<br><br>                               *Defendants*.<br>---------------------------------------------------------------- X | ELECTRONIC PUBLICATION ONLY<br><br>MEMORANDUM<br>AND ORDER<br><br>10-CR-150(JG) |

A P P E A R A N C E S :

    BENTON J. CAMPBELL
        United States Attorney
        Eastern District of New York
        271 Cadman Plaza East
        Brooklyn, New York 11201
    By:    Amy Busa
            Cristina Marie Posa
    *Attorney for the United States of America*

    RUBENSTEIN & COROZZO LLP
    260 Madison Avenue
    New York, New York 10016
    By:    Joseph R. Corozzo, Jr.
    *Attorneys for Defendant Gaetano Napoli, Sr.*

JOHN GLEESON, United States District Judge:

        On March 4, 2010, a grand jury returned a nine-count indictment against Gaetano Napoli, Sr., Thomas Napoli and Gaetano Napoli, Jr. Six days later, the defendants were arrested and Joseph R. Corozzo, Jr. filed a notice of appearance with this Court indicating that he had been retained to represent Gaetano Napoli, Sr. ("Napoli"). On March 18, 2010, the government moved to disqualify Corozzo and his law firm, Rubenstein & Corozzo, P.C., from representing Napoli at trial. On April 16, 2010, following oral argument, I granted the government's motion, with a promise that this opinion would follow.

BACKGROUND

The indictment charges Napoli with, *inter alia*, making false statements in the course of a bankruptcy proceeding, conspiring to conceal assets in a bankruptcy proceeding and obstructing justice. Specifically, in counts eight and nine of the indictment, Napoli is charged with corruptly persuading or attempting to corruptly persuade a witness, Charles Starace, to withhold testimony or documents from law enforcement officers investigating Napoli's alleged bankruptcy fraud.

Starace agreed to cooperate with the government and he consensually recorded two meetings he had with Napoli and others. Starace, Napoli and Gaetano Napoli, Jr. were present at the first meeting, which took place on October 12, 2009. Corozzo was not mentioned by name at any time during this meeting. Napoli told Starace to "say nothing. Listen, either you give me time, I'll have my lawyer get in touch with you or do I get in touch with my lawyer." Napoli also said, "Let's not try to be lawyers for our friends. Okay? … That's it. That's what he told me." The government contends that Napoli was relaying to Starace instructions from Corozzo about what Starace should do (and not do) if approached by law enforcement. Thereafter, Napoli stated to Starace, "Do not speak to them. One fuckin' word out of the way and we're all shit-fucked."

One week later, on October 19, 2009, Starace recorded another conversation with Napoli, and this time Corozzo were present as well. Napoli told Starace, "If anybody comes around, you don't know nothing … that's it … give them the name of a lawyer, my lawyer gets in touch, that's it, one word out of the way could fuck up everything." Immediately thereafter, Corozzo stated "Well, that's what happen[s] like they grabbed Peppe and two seconds … he had every legal right not to give them this paper and not to talk to them but he gave them this paper

and you know what it did? It didn't prove anything it just gets them interested and it makes them carry on." Later on in the conversation, Napoli told Starace, "[j]ust don't answer no questions … don't answer no questions …."

## DISCUSSION

A.   *The Qualified Right to Counsel*

The Sixth Amendment to the United States Constitution guarantees every defendant the right "to have the Assistance of Counsel for his defence." U.S. CONST. AMEND. VI. The right to counsel, however, is not absolute. While it guarantees "an effective advocate for each criminal defendant," the Sixth Amendment does not "ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States,* 486 U.S. 153, 159 (1988). In certain situations, disqualification of the defendant's chosen counsel may be appropriate in order to protect the defendant's "correlative right to representation that is free from conflicts of interest," *United States v. Williams,* 372 F.3d 96, 102 (2d Cir. 2004)(quoting *Wood v. Georgia,* 450 U.S. 261, 271 (1981)), or the court's interest in the integrity of the judicial process, *Wheat,* 486 U.S. at 160.

The government advances two arguments for disqualifying Corozzo. First, it contends that the facts alleged in the indictment implicate Corozzo in Napoli's alleged criminal acts and, therefore, Corozzo's own interests in avoiding prosecution conflict with Napoli's interests in defending the charges. Second, the government argues that Corozzo possesses firsthand knowledge of the facts underlying two of the charges against Napoli. As a result, he should be available to Napoli as a defense witness at trial; he also would necessarily become an unsworn witness for Napoli, in violation of the advocate witness rule, if he is allowed to proceed as defense counsel at trial.

B.   *The Conflicts of Interest In This Case*

    1.   *Defense Counsel's Alleged Illegal Conduct*

"An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a factual or legal issue or to a course of action." *United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003)(quoting *United States v. Schwarz,* 283 F.3d 76, 91 (2d Cir. 2002)). "It is well-settled in this circuit that an actual conflict of interest exists when an attorney engages in wrongful conduct related to the charge for which the client is on trial." *United States v. Fulton*, 5 F.3d 605, 609 (2d Cir. 1993). The government argues that Corozzo is burdened by an actual conflict of interest because he engaged in the conduct that gave rise to the witness tampering charges against Napoli and he is a subject of the government's investigation into those charges. I agree.

When defense counsel is implicated in the defendant's crimes, there is a substantial risk that the interests of the two will conflict. Defense counsel may, for example, refrain from preparing a zealous defense against the charges or from advising his client to accept a plea agreement with the government for fear that evidence of counsel's crimes may be discovered. *United States v. Cancilla*, 725 F.2d 867, 870 (2d Cir. 1984)(holding such a conflict to be a *per se* violation of the Sixth Amendment). In such situations, "[a]dvice as well as advocacy is permeated by counsel's self-interest, and no rational defendant would knowingly and intelligently be represented by a lawyer whose conduct was guided largely by a desire for self-preservation." *Fulton,* 5 F.3d at 609.

Here, the government contends that Corozzo and Napoli conspired to corruptly persuade Starace to withhold testimony and documents from law enforcement. In his opposition

4

to the motion, Napoli argues that his waiver of the right to conflict-free counsel would be sufficient to cure any conflict because the "allegations of improper conduct are untrue." Def. Opp. at 5. He notes that the Second Circuit held in *Fulton* that disqualification of counsel is not required if "the allegations [against defense counsel] are clearly false." 5 F.3d at 613. I am not persuaded.

In order for the government to convict Napoli of count eight, it must prove that: (1) he attempted to corruptly persuade Starace to withhold testimony or documents from law enforcement and (2) he did so with the intent to "hinder, delay, or prevent the communication to a law enforcement officer … of information relating to the commission or possible commission of a Federal offense." 18 U.S.C. § 1512(b)(3). To act with a corrupt intent is to act with "an improper purpose." *United States v. Kaplan,* 490 F.3d 110, 125-26 (2d Cir. 2007)(jury instruction giving "corrupt intent" that definition "adequately conveyed the statute's *mens rea* requirement"). The recordings presented to me by the government amply support the inference that Napoli and Corozzo encouraged Starace to refrain from speaking to law enforcement. The critical question for the jury at Napoli's trial will be why, that is, whether he acted with the improper purpose of impeding the investigation into Napoli's alleged bankruptcy fraud.

On October 12, 2009, Napoli told Starace that if he spoke to law enforcement, "we're all fucked." Napoli also relayed instructions not to provide any information to law enforcement and to invoke the right to counsel if questioned. Starace will testify at Napoli's trial, in essence, that he understood that Napoli was delivering instructions from Corozzo, and Napoli's reference to "my lawyer" (in conjunction with evidence of Napoli and Corozzo's pre-existing relationship) will support that testimony. On October 19, 2009, Napoli told Starace "you know nothing" and that he should not answer questions when approached by law

5

enforcement. Napoli warned that one word "out of the way could fuck up everything." Corozzo was present when Napoli made those statements to Starace, and Corozzo lent support to the effort by telling Starace that he had a legal right to refuse to speak to law enforcement.

A jury could reasonably infer from this evidence that Napoli was telling Starace not to speak to law enforcement in order to impede the investigation into Napoli's alleged bankruptcy fraud. The jury could also infer that Corozzo's involvement in both conversations (and his actual presence for the second one) evidences his own corrupt intent to obstruct the investigation into Napoli's alleged crimes. These allegations may not ultimately be proved to the satisfaction of a jury, but I reject Napoli's contention that they "are clearly false."

Napoli also argues that disqualification is unnecessary because no witness has directly implicated Corozzo in any crime. It is true that in *Fulton* a government witness testified that he had delivered a shipment of heroin to defense counsel, 5 F.3d at 612-13, and the facts here are less stark, but the question whether a person acted with the intent to obstruct justice is almost always answered by resort to circumstantial evidence. *See, e.g., United States v. Nelson,* 277 F.3d 164, 197 (2d Cir. 2002). Given the content of the recorded conversations the government has presented, there is sufficient circumstantial evidence to permit a jury to find that Corozzo acted with an improper purpose. In *Fulton*, the court of appeals identified the key inquiry to be whether there is a "reasonable possibility" that the allegations against defense counsel are true. 5 F.3d at 611. Such a possibility certainly exists here. For that reason, "assum[ing] the worst," as I must, disqualification is required in this case. *Id.*

### 2. *Defense Counsel as a Witness*

The government also argues that Corozzo should be disqualified so he can be available to testify as a defense witness. Also, if he is permitted to continue as defense counsel, the government contends, Corozzo would inevitably act as an unsworn witness at trial.

In addition to ensuring that Napoli is represented by "an effective advocate, … [I] have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and the legal proceedings appear fair to all who observe them." *Wheat,* 486 U.S. at 159-60. Accordingly, I may deny Napoli his chosen counsel if allowing that choice would undermine the integrity of the proceedings before me.

Napoli argues that "[w]hen placed in context and in conjunction with the recordings made October 19, 2009, it is definitive defense counsel did not obstruct or conspire to obstruct or tamper with witnesses." Def. Opp. at 5. To support this argument, Corozzo has argued that, viewed in context, his and Napoli's statements to Starace lack the requisite intent to corruptly persuade Starace. But this argument is based on the same factual context from which the government will argue Napoli is guilty of the crimes alleged. Napoli will argue at trial that he did not harbor an improper purpose when he spoke to Starace on October 12 and 19, 2009. He may want to advance the same explanation presented by Corozzo in opposition to the motion. It follows, then, that Corozzo's knowledge of the facts and participation in some of the events giving rise to the charges against Napoli make him a potentially valuable witness in Napoli's defense. As such, the ethical standards of the legal profession prohibit Corozzo from "act[ing] as [an] advocate" in this case. N.Y. Rules of Prof. Conduct 3.7, N.Y. Comp. Codes R. & Regs., tit 22, § 1200.0; *Ramchair v. Conway,* 08-PR-2004, 2010 WL 1253893, at *7 n. 6 (2d Cir. Apr. 2, 2010)(noting that Rule 3.7 is "substantially the same" as the old rule DR-5-102(A)). Corozzo's

7

participation as both advocate and key witness in Napoli's trial would jeopardize my interest in ensuring that the trial is conducted fairly and in conformity with prevailing ethical rules. Corozzo argues that these rules carve out an exception to allow him to testify on behalf of his client while acting as counsel if his "disqualification … would work substantial hardship on the client." *Id.* He contends that Napoli would be disadvantaged because he has a long-standing attorney-client relationship with him.  However, provided Napoli retains new counsel to try the case, Corozzo is not prohibited from assisting in Napoli's defense prior to or even during trial.  Corozzo is disqualified only from appearing at trial on behalf of Napoli.  To that extent, any hardship to Napoli is diminished.  *See United States v. Cunningham,* 672 F.2d 1064, 1074 (2d Cir. 1982)(disadvantage to defendant is "reduced considerably" by court order allowing counsel to "participate in all aspects of the defense except the actual trial").  I recognize that denying Napoli of trial counsel of his choice is nonetheless a significant deprivation, but I conclude that the countervailing considerations discussed here require it.

Even if Corozzo is not called to testify at Napoli's trial, he would inevitably be an unsworn witness at the trial if he were permitted to remain as trial counsel.  The government will offer at trial recordings of the October 12 and 19, 2009 meetings.  Corozzo is arguably a subject of the first of those conversations, and he is indisputably a participant in the second.  His firsthand knowledge of the events in question would lend special weight and credibility to the arguments he makes in Napoli's defense.  Indeed, the jury may accept Corozzo's "unsworn testimony" about events precisely because he was present for them.

"When an attorney is an unsworn witness … the detriment is to the government, since the defendant gains an unfair advantage, and to the court, since the factfinding process is impaired.  Waiver by the defendant is ineffective in curing the impropriety in such situations,

8

since he is not the party prejudiced." *United States v. Locascio*, 6 F.3d 924, 934 (2d Cir. 1993). Accordingly, Corozzo should be disqualified from representing Napoli on this additional ground as well.

### 3. *Imputation of Corozzo's Conflicts to Rubenstein & Corozzo, P.C.*

The conflicts of interests burdening Corozzo must be imputed to his firm, Rubenstein & Corozzo, P.C. The New York Rules of Professional Conduct prohibit Corozzo's law partner, Ronald Rubenstein, from "knowingly represent[ing] a client when [Corozzo] … practicing alone would be prohibited from doing so." N.Y. Rules of Prof. Conduct 1.10, N.Y. Comp. Codes R. & Regs., tit 22, § 1200.0. The need for imputed disqualification is even greater here, where Corozzo is one of only three lawyers employed at the firm. *See Regal Marketing, Inc. v. Sonny & Son Produce Corp.,* No. 01-CV-1911, 2002 WL 1788026, at *6 (S.D.N.Y. Aug. 1, 2002)(an "attenuated relationship" between a law firm disqualified due to a conflict and a lawyer who is "of counsel" at that firm may obviate the need for imputation); *Gray v. Memorial Medical Center, Inc.,* 855 F. Supp. 377, 379 (S.D. Ga. 1994)("[T]he level of an individual attorney's involvement within a firm is an important factor in a decision to impute disqualification to other attorneys."). Accordingly, the firm is disqualified from representing Napoli at trial.

## CONCLUSION

The task before me on this motion was not an easy one, for the stakes are high for Napoli. Moreover, as the Supreme Court has recognized, I "must pass on the issue of whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pretrial context when relationships between parties are seen through a glass, darkly." *Wheat,* 486 U.S. at 162-63. Nevertheless, I

9

disagree with Corozzo's claim at oral argument that the decision before me was "a very close call." To me, the obvious and substantial risks to the integrity of the proceedings and the parties' right to a fair trial require that Corozzo & Rubenstein, P.C. be disqualified from representing Napoli at trial.

                                              So Ordered.

                                              John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
       April 27, 2010

Case 1:10-cr-00150-JG   Document 31   Filed 04/27/10   Page 10 of 10 PageID #: 462