

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

AB:CMP

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 15, 2010

BY E-MAIL and ECF

Probation Officer Holly Kaplan
United States Department of Probation
Eastern District of New York
290 Federal Plaza
Central Islip, New York 11722

      Re:   United States v. Gaetano Napoli, et al.
             Criminal Docket No. 10-150 (JG)

Dear Probation Officer Kaplan:

      The government respectfully submits the following objections to the Pre-Sentence Reports of Gaetano Napoli, Sr. ("SR PSR"), Gaetano Napoli, Jr. ("JR PSR") and Thomas Napoli ("TN PSR"). The paragraph references below are to those contained in Gaetano Napoli, Sr.'s PSR unless otherwise indicated; however, the objections to the factual background apply to all defendants' Pre-Sentence Reports.

      Paragraph 5: While Starace assisted the Napolis with some financial matters, he did not work as a financial advisor per se. Thus, the last sentence should read "Charles Starace is a friend of the Napoli family and assisted them with some financial matters."

      Paragraph 7: There is a typographical error. The sentence beginning "The petition" should read "The petition was signed . . ."

      Paragraph 10: The conversations referenced herein, and in many of the subsequent paragraphs, were intercepted pursuant to court-authorized Title III wiretaps but are incorrectly identified in the PSR as consensually-recorded conversations. Thus, this paragraph should read as follows: "Shortly after the 341(a) meeting, during several conversations intercepted pursuant to a court-authorized Title III wiretap, Gaetano Napoli, Sr., his two sons, and Charles Starace discussed the need to move equipment before the Bankruptcy Trustee conducted a site

inspection of the premises of the Napoli & Sons warehouse in an effort to conceal from the Bankruptcy Trustee and to convey assets.  In furtherance of their fraudulent scheme, Gaetano Napoli, Jr. and Gaetano Napoli, Sr. discussed setting up a fictitious entity, "G & T Meatpackers," which Napoli, Jr. established.  Both Gaetano Napoli, Sr. and Gaetano Napoli, Jr. instructed customers to write checks in the name G & T Meatpackers, instead of Napoli & Sons, in order to conceal these accounts receivables and payments from the Bankruptcy Court."

   Paragraph 11: While Starace previously owned some equipment that he either gave or loaned to the Napolis, there is no loan agreement between Starace and Gaetano Napoli, Sr. or Napoli & Sons Meat, Inc., nor did Starace make a U.C.C. filing, nor was Starace listed as a creditor in Napoli & Sons' bankruptcy petition.  Thus, it is more accurate for this paragraph to read as follows: "Thomas Napoli arranged for various equipment owned by Napoli & Sons, including a 500-lb meat grinder, fork lifts and other industrial-sized meat-packing equipment, to be transported to a storage facility located in the vicinity of Exit 61 on the Long Island Expressway.  However, prior to the equipment being transported to the storage facility, Gaetano Napoli, Sr. sold the equipment for $100,000 to Parma Provisions, a customer of Napoli & Sons located in Whitestone, New York.  Agents conducting surveillance videotaped the property being moved from the premises of Napoli & Sons to Parma Provision's warehouse.  Pursuant to this sale, Gaetano Napoli Sr., received $50,000 and a $20,000 promissory note.  Starace received two checks totaling $30,000, which was the value of the equipment Starace previously provided to Napoli & Sons in an effort to aid their business.  Neither the foregoing sale nor the funds received from same were reported to the Bankruptcy Trustee."

   Paragraph 12: The government, prior to the disclosure of the PSR provided an explanation for the parties' assessment as to the loss amount that was reasonably foreseeable to Gaetano Napoli, Jr. and Thomas Napoli, which it repeats herein: "Because Gaetano Napoli, Jr. and Thomas Napoli were not involved in the negotiation of the sale, the parties agree that there is not sufficient evidence to prove by a preponderance of the evidence that the loss amount of $100,000 was reasonably foreseeable as to them, and agree that a loss of over $30,000 was reasonably foreseeable in light of the perceived value of the assets." Thus, the last clause of that paragraph is inaccurate and should be deleted.

Paragraph 13:  Maffetone was aware of Napoli, Sr.'s association with organized crime.  Maffetone was not aware of the specific organized crime family to which Napoli, Sr. belonged.

Paragraph 14:  The conversations referenced in this paragraph were intercepted pursuant to court-authorized wiretaps.  Thus, the first sentence of this paragraph should read as follows: "On June 26, 2009, during an intercepted telephone conversation between Gaetano Napoli, Sr. and Salvatore Maffetone, Gaetano Napoli, Sr. stated the following, "I spoke to a friend of mine today he's a tough cookie, you understand?  He wants me to guarantee it a hundred and one percent in front of other people ya know?  Then I could buy time.  You understand what that means, don't ya?"

Paragraph 15:  The conversations referenced in this paragraph were intercepted pursuant to court-authorized wiretaps.  Thus, this paragraph should read as follows: "Salvatore Maffetone subsequently failed to repay the funds to Gaetano Napoli, Sr.  Consequently, Gaetano Napoli, Sr., with the assistance of Thomas Napoli who passed messages on his father's behalf, threatened Salvatore Maffetone and Maffetone's brother-in-law, Steven Mulqueen, in an attempt to receive payment. On July 15, 2009, during an intercepted telephone conversation between Thomas Napoli and Steven Mulqueen, Thomas Napoli told Steven Mulqueen that Salvatore Maffetone had to "hold up to his word."  He also told Steven Mulqueen that he must "do what you gotta do" and tell Salvatore Maffetone not to give "bad news tomorrow."  On behalf of Gaetano Napoli, Sr., Thomas Napoli also instructed Steven Mulqueen to tell Salvatore Maffetone the following message, "You give bad news, you are owned-that's the bottom line, they will be changing your name to whatever you want."

Paragraph 16:  The conversations referenced in this paragraph were intercepted pursuant to court-authorized wiretaps.  Thus, this paragraph should read as follows: "Also on July 15, 2009, during an intercepted telephone conversation between Gaetano Napoli, Sr., and Steven Mulqueen, Gaetano Napoli Sr., stated the following, "You called me, and I saw you come down. I saved his ass, otherwise right now, I think he'd be in the fucking hospital, you know what I mean and I can't look bad, I cannot fucking look bad, you know what's going to happen."

Paragraph 17:  The conversations referenced in this paragraph were intercepted pursuant to court-authorized wiretaps.  Also, the reference to "Steven Maffetone" is incorrect, as the relevant individuals are Steven Mulqueen and Salvatore Maffetone.  Thus, this paragraph should read as follows: "On July 16, 2009,

Salvatore Maffetone and Steven Mulqueen again failed to meet with Gaetano Napoli, Sr.  During an intercepted telephone conversation between Thomas Napoli and Steven Mulqueen, Thomas Napoli told Steven Mulqueen that his father (Gaetano Napoli, Sr.) was going to Mulqueen's father's house.  Steven Mulqueen related that he would never "disrespect the Napolis."  Later that day, Gaeatano Napoli, Sr. told Steven Mulqueen that Maffetone had "until Monday to repay the loan" and stated "It's you and your fucking brother-in-law's problem.  You don't want your father involved, that's fine but Monday night, that's it.  I'm giving you an extension I shouldn't even give.  Don't make me come around and look for you."

Paragraph 18:  The conversations referenced in this paragraph were intercepted pursuant to court-authorized wiretaps.  Thus, this paragraph should read as follows: "During another intercepted telephone conversation on July 21, 2009, Thomas Napoli, using coded language, confirmed with Steven Mulqueen that the total amount of the debt to be repaid to the Napolis was $30,000.  Later that day, agents observed Steven Mulqueen meet with Gaetano Napoli, Sr. at Napoli & Sons warehouse in West Babylon, New York.  During this meeting, Steven Mulqueen retrieved a blue bag from the trunk of his car, greeted Gaetano Napoli, Sr., and entered the warehouse.  Shortly thereafter, Steven Mulqueen exited the warehouse empty-handed.  Gaetano Napoli, Sr., placed a phone call to Steven Maffetone and stated, "Your brother-in-law is here.  He took care of everything.  You're lucky you didn't come with him.  That's it.  That's a gift from me to you.  It's over but don't ever fucking pull this shit again that you come to me for a favor and fucking lie the way you did because you will never forget it for the rest of your life."

Paragraph 21 should read as follows: "In the Fall of 2009, agents served several witnesses with grand jury subpoenas to seek testimony regarding the defendants' concealment of assets in the bankruptcy.  Following the service of a subpoena by agents of the Federal Bureau of Investigation (FBI) to Angela Mione, an employee of Napoli & Sons, Ms. Mione contacted Gaetano Napoli, Sr., to discuss the nature of the visit by the agents.  In an intercepted telephone conversation, Ms. Mione told Gaetano Napoli, Sr. that she didn't know the answers to the agents' questions and responded that she "didn't know them."  Shortly thereafter, in another intercepted telephone call, Gaetano Napoli, Sr. called Charles Starace and was told by Starace, "We have a problem on our hands here and we need to get her (Ms. Mione) a lawyer, and have the FBI go back and interview her."  Charles Starace indicated, "I don't want her to go into the Grand Jury."  During a subsequent telephone call, Gaetano Napoli, Sr.

told Charles Starace, "The lawyer can school Ms. Mione on what to say and what not to say because Ms. Mione is a little bit light-headed."

Paragraph 22:  The conversation referenced in this paragraph was consensually recorded.  Thus, this paragraph should read as follows: "On October 12, 2009, during a consensually recorded conversation between Gaetano Napoli, Sr. and Charles Starace, Gaetano Napoli, Sr. told Charles Starace that Ms. Mione "Had been schooled on what to do and what not to do."  During the same conversation, Gaetano Napoli, Sr. and Gaetano Napoli, Jr. directed Charles Starace from speaking to law enforcement authorities and coached Starace on how to respond in the event he is contacted by FBI agents.  Gaetano Napoli Sr. told Charles Starace, "I hope I don't have to worry about you."

Paragraph 23: The conversation referenced in this paragraph also occurred during the same consensually recorded conversation on October 12, 2009.  Thus, this paragraph should read as follows: "Later, in the same consensually recorded conversation, Gaetano Napoli, Sr. told Charles Starace, "Do not volunteer to nobody nothing.  Anybody calls, what's up? Goodbye? Tell Tommy.  Do not speak to them.  One fuckin' word out of the way and we're all shit-fucked."

Paragraph 24 is factually incorrect and should be stricken.

Paragraph 26 does not include the creditors listed on the bankruptcy petition, who are also victims of the defendants' bankruptcy fraud for restitution purposes.  The creditors listed on the bankruptcy petition should be included herein.

Paragraphs 33 and 35: As indicated above, the parties believe that the $100,000 was not reasonably foreseeable to Thomas Napoli and Gaetano Napoli, Jr, and that a loss amount of greater than $30,000 is appropriate. In light of Thomas Napoli's minimal role in the bankruptcy fraud, which consisted of arranging the movement of the equipment, we believe a minor role adjustment is appropriate for him, and thus, paragraph 45 of Thomas Napoli's PSR should be modified to reflect this adjustment.  Accordingly, paragraph 42 of Thomas Napoli's PSR and paragraph 44 of Napoli, Jr.'s PSR should be modified to reflect a six-level enhancement for loss greater than $30,000.

Paragraph 37: Starace also acted as a liaison or intermediary with the bankruptcy attorney.  Consistent with this objection and the objection noted above, this paragraph should

read as follows: "<u>Charles Starace</u> - self-surrendered to agents on July 7, 2010. He pled guilty to Counts 1 and 2 of a two-count information (10-CR-294). He made no post-arrest statements. As previously noted, Charles Starace was a friend of the Napoli family and assisted them in some financial matters. Charles Starace functioned as an intermediary between Gaetano Napoli, Sr., the Napoli & Sons's bankruptcy attorney, and the Bankruptcy Trustee."

Paragraph 38: Consistent with the objection noted above and with the events surrounding the sale of Napoli & Sons' assets, this paragraph should read as follows: "He advised and assisted Gaetano Napoli, Sr., in preparing and submitting the bankruptcy petition, and accompanied Gaetano Napoli, Sr., to the 341(a) meeting. During this meeting and in subsequent proceedings, he made false statements on Gaetano Napoli's behalf, while under oath, regarding the ownership of the Napoli & Son's equipment and assets. He also provided to Napoli & Sons $30,000 worth of equipment in an effort to aid the business. When Napoli, Sr. sold the assets of Napoli & Sons to Parma Provision without the permission or knowledge of the Bankruptcy Trustee, Starace interceded in the sale and received two checks totaling $30,000 directly from the buyer."

Paragraph 40 has a typographical error. The word "and" should be deleted in the last clause of the second sentence.

Paragraph 42: The government believes acceptance of responsibility points are warranted in this case. Although Napoli, Sr. and Napoli, Jr. engaged in obstructive conduct prior to their indictment and arrest, the government currently does not have any evidence that they continued their efforts to obstruct after they were arrested. Both men indicated their willingness to plead guilty, and pled guilty, in a timely fashion and acknowledged their crimes. In addition, Gaetano Napoli, Jr.'s role in the obstruction was much more limited than his father's. <u>See</u>, <u>e.g.</u>, <u>United States v. Restrepo</u>, 936 F.2d 661, 679 (2d Cir. 1991) (affirming the application of a post-indictment obstruction enhancement with reduction for acceptance of responsibility in light of the defendant's plea to all charges in the indictment and the defendant's admission "in some detail his activities in connection with the criminal enterprise"); <u>United States v. Booth</u>, 996 F.2d 1395, 1397 (2d Cir. 1993) (per curiam) (noting that the district court applied an obstruction enhancement for pre-indictment conduct, while awarding two-level reduction for acceptance of responsibility and finding that the district court's denial of a third-point reduction in acceptance of responsibility was not an abuse of discretion). Accordingly,

paragraph 65 of Napoli, Sr.'s PSR and paragraph 50 of Napoli, Jr.'s PSR should be modified to reflect a three-level reduction for acceptance of responsibility.

Paragraphs 45-51: The government submits that the calculation of Napoli, Sr.'s offense is more appropriately made by reference to U.S.S.G. § 2J1.3, addressing perjury, as the essence of the offense to which Napoli, Sr. pleaded was the false statements during the Section 341(a) meeting, rather than to concealing assets during bankruptcy that was charged in Count Three. The Sentencing Guidelines manual refers violations of 18 U.S.C. § 152 to three separate Guidelines' provisions, Sections 2B1.1, 2B4.1 and 2J1.3. Thus, the Guidelines' calculation for Count Two is as follows:

Count Two

| | |
|---|---|
| Base Offense Level (2J1.3(a)) | 14 |
| Plus: Defendant was Organizer or Leader (3B1.1(c)) | +2 |
| Plus: Obstruction of Investigation (3C1.1)) | +2 |
| Total Adjusted Offense Level | 18 |

Very truly yours,

LORETTA E. LYNCH
United States Attorney

By: _____/s/_____
Amy Busa
Cristina Posa
Assistant U.S. Attorneys
(718) 254-6274/ 6668

cc: The Honorable John Gleeson (by ECF)
    Defense Counsel, by ECF
    Clerk of Court (JG), by ECF